May it please the Court, my name is Joe de Blasio on behalf of American Eagle Express, which I'll refer to as AEX. I'd like to reserve four minutes for rebuttal. That's fine, go ahead sir. Thank you, Your Honor. You look like you're low. Excuse me, Your Honor? Your bottle looks almost empty. Yeah, it's been a long afternoon. Your Honor, today we're asking this Court to reverse the decision of the lower court denying AEX's motion for judgment on the pleadings. Particularly, the motion asked the lower court to dismiss as preempted all the affilies claims under the FQA. Why is it Lupien dispositive? Your Honor, I think Lupien is dispositive. Excuse me, I think Lupien is, it puts this Court in a very unique position. So before Lupien, what did we have? We had precedent in the Seventh Circuit, we had precedent in the First Circuit. The only two circuits to squarely address the issue of misclassification of drivers under a state ABC test. In the Seventh Circuit, we had Costello. In the First Circuit, before Costello, we had MBA. And then after Costello, we had Schwann v. FedEx. Lupien puts this Court in a very unique position. Lupien came before this Court under New Jersey and Illinois state law. The New Jersey claims were dismissed, leaving it with Illinois state law claims only. Lupien itself was an absolute repeat of Costello in the Seventh Circuit. Now, what comes before this Court is a claim under New Jersey state law, which is just as far-reaching as the Massachusetts state law. Now this Court has a chance to decide. Did you mean Illinois instead of Massachusetts? No, this case today is just, the impacts of New Jersey law are unlike Lupien, are just as far-reaching as Massachusetts. So you're talking about Schwann, right? You're talking about Schwann. I'm talking about Schwann, yes. How is it as far-reaching? The language of the New Jersey statute has an extra clause that's not present in Prong B that exists in the Massachusetts. You're wrong. This is the argument that Appellate's counsel makes. The argument misses the point. The question isn't the ABC test. The question is what are the impacts if the ABC test requires reclassification? And the impacts that you have articulated for us are a list of we may have to get our human resources and maybe we're going to have to buy some vehicles and maybe we're going to have to comply with some other laws. But those are just your statements and this is not, we're stuck at the playoffs. How can we consider all that? Your Honor, this Court must consider all that. I'm so sorry. Help me. Sure. In this procedure of posture, when it's a judgment on the pleading, similar to the motion to dismiss, not exactly, that was in Lupien, and the distinction that Judge Chigueras drew between what he had before him in Lupien and most of the other cases cited to him, those cases being summary judgment cases, his case being a motion to dismiss, we're stuck with the pleadings. So how are we to take the massive amounts of information that you've given us? You know, it's going to cost us this, we're going to have to do that, et cetera. How do we take all that into account? Very easy, Your Honor. And I think counsel for athletes would agree with me that this is the time to decide this issue, not on the discovery record. When you look at the four pillars of Supreme Court precedent that create the framework, Northwest, Rollins, Morales, Rowe, none of those cases used empirical data to decide an issue. When you look at the circuit court cases that have decided this issue, Costello, NBA for short, even Schwann versus FedEx, you know, that was a summary judgment motion. None of those courts used empirical data to make this decision. Well, that would seem to hurt me because Lupien said we certainly can't grant at this stage. If there's any way we're going to grant it, it would be with more data. But Lupien ruled against the claim. Your Honor, let me explain why Lupien ruled against the claim and respectfully. Lupien didn't say we can't. It said it's not dispositive, maybe we can. The reason why Lupien denied the projection application was because Lupien was a repeat of Costello. The impacts were minimal. In fact, this morning I had the pleasure of listening to the oral arguments in the Lupien decision. And my administrator, Mr. Lipton, who will be representing the appellees in this matter, argued that case for the driver. Let me cut through with the hypothesis. Let me come to something that has a more direct impact. The state of New Jersey decides that it wants all its drivers to earn a living wage, and so it had all of its employees, not just drivers, so not limited to the transportation industry, $30 an hour minimum wage. Is your position that because on the face of the complaint, I can see that this is going to drive up the cost of deliveries, as well as on hamburgers and everything else, that therefore there is automatically a carve-out of New Jersey state law just for delivery drivers, because you can trace, with a better causal line than the one we're talking about here, you can trace an impact between $30 an hour as the minimum wage and driving up the price of FedEx or UPS or whatever deliveries here. Under your theory, is that preempted? Yes, Your Honor, and the reason why it's preempted is because under that hypothetical scenario, if the court determined that the impact that the application of that state law has on the prices was significant enough, then it absolutely is preempted. First of all, you're getting into line-drawing. I don't understand how you're supposed to do this on a judgment on the pleading. Now, if we were further along... My hypothetical is better, because mine is $50 an hour. If we were further along in the proceedings, both of our hypotheticals would be fun. The information that you put forth would be interesting. Where do you draw the line on significant? And the whole notion of the language on indirect result, does that influence how you think about significant? Great, but how do we do that in this context? Your Honor, and let me explain it in a little bit more depth. Like I said, the four pillars that we cite here, the four Supreme Court precedents, all of those cases decided the preemption issue without looking at factual discovery. The circuit court cases that have addressed this issue already have decided the issue without looking at factual discovery. But my husband said it wasn't preempted. That's not true, Your Honor. Cosello said no preemption. That was a case he just cited to us. And Schwan said preemption, but Schwan's language was different, and they were... That was a different posture. And, Your Honor, MDA also found that there was preemption. There was a discovery record in MDA. In Schwan, even though... But they didn't need a record, because they could look at the language and see what it was requiring of... It caused the entity to have to totally change its business model, correct? Exactly, Your Honor. Do we have that in front of us? No. Absolutely, Your Honor. Absolutely, if I may address that. Absolutely, we have that in front of us. We're here on a motion for judgment on the pleadings. We're accepting as true all of the allegations in the complaint. MDA, you had to look at the ABC test, because they needed standing. They came on a declaratory judgment. They said, it's a big bond. We can't meet it, so we have standing. But, excuse me, here, we don't need that step. We're assuming all the allegations are true. We're assuming the allegations that we've acted unlawfully and misclassified the drivers as independent contractors. So the only question before the court is, what, then, is the impact of that reclassification? Here's what I think. There's a legal component. There's a component that maybe you could get to at the complaint stage, and then the component that requires discovery. So the test is, the effect has to be significant, and it has to not be too remote, tenuous, or peripheral. So certain kinds of indirect effects are going to be too remote or too tenuous, even if they're large in a significant percentage wise. So it might be as a matter of law, sometimes there's a proximate cause, there's an intervening cause or something, and you lose at a motion-to-dismiss stage. I don't see how you can win at a motion-to-dismiss stage. And the reason why is because the court doesn't look at factual discovery to decide a preemption issue. With the Supreme Court mandate, you look at the logical effect of the state statutory scheme, and that's what we're asking this court to do. That's what every court has done. How do we gauge those significance simply from your allegations that as a matter of logic, if we assume we misclassified and therefore need to reclassify, as a matter of logic, it's going to have, quote, a significant effect? How do we judge that? What factors should we consider when we don't have a record in front of us that tells us the economic consequences? Your Honor, that's what NDA did. I'm asking you how do we do that? Because, as in Schwann, in this case, reclassification means completely changing the business model. Costello didn't require you changing the business model. Costello only required, I need to get the consent of the employees to make the deductions. I don't have to change anything else. Costello said, that's tenuous, remote, and peripheral. That's not significant. In Schwann, it was significant because you had to reshape the business model. In this case, we would have to reshape the model. This is a matter of armchair theory. Armchair neoclassical economics says that there's always going to be someone in a well-functioning market who's functioning right at the line of profitability. Competition is going to drive it down. So, any time you change anything that has any delta, any effect on the inputs, that's automatically going to drive it up. So, there is no limiting principle to your rationale. We can sit back, we can say, this slight increase to employee unemployment benefits, health care benefits, et cetera, is going to drive up prices a little bit, and then everything's going to be preempted under your rule. You run at the line, you cross the line, which goes from remote, tenuous, and peripheral to significant. That's the question. With his hypothetical, that would mean that you'd have to pick the right plaintiff, right? The right business to complain. Because a strong business would have no effect on its, no significant impact with, I don't know, 2% increase. A small business, that same 2% increase would bankrupt it, right? But we can't possibly be getting into those kind of questions out on a gentleman on the plane. Do you think it's preempted as to certain employers and not as to other employers in the same market? No, Your Honor. When you look at the precedent, when you look at the four Supreme Court cases, when you look at Costello, when you look at MBA and also Schwann, all of the courts, the Supreme Court and the circuit courts, engaged in this analysis and made it determined. In fact, in the Senate circuit before Costello, what S.G. Johnson said, they described it as a line. It's either going to fall on the short side of the line or it's going to cross the line for preemption. This court's obligation, as I see it, is to engage in the analysis and look at what would be the impacts of reclassification, in this case, under New Jersey law, and would those impacts be significant enough to be more than tenuous, remote, and peripheral? You want us to rely on Lupien, and you say that Lupien is actually... If I'm Lupien, take me home. That's correct. Okay. So, in the penultimate paragraph of Lupien, Judge Shigeru says, we know that the BMX, DILTS, and SWAN cases all were decided in the context of a summary judgment record, and De Fiori was a trial record. And then he goes on to say why he's not going to rule in favor of Corey. So, with that sort of framing of the analysis, how... I'm so sorry. I can't repeat it myself. But how do we, on the two, get there with Lupien saying what I just read? Lupien did not say that this matter cannot be decided on a summary judgment... must be decided on a summary judgment motion. And, again, Your Honor, I'm going to ask the court to look at more than just this one sentence. Look at Lupien in its totality. Look at the precedent that existed before Lupien, particularly in the Supreme Court cases. Every court to address this issue has addressed it without looking at factual discovery. Let me say it this way. If we engaged in factual discovery, what would that tell us? That would tell us what's happened. The question before this court isn't what happened. The question before this court is, what would happen in the future should AX be required to reclassify? What would be the impacts in the future should AX be required to reclassify? Should AX... Wouldn't it be in the market as a whole that shippers as a whole are going to have to change their business models? Because you just said this isn't a plaintiff-by-plaintiff inquiry here. That's correct, Your Honor. Which is why in NDA it was the Trade Association for Same-Day Couriers, which is what AX is, coming forward in the First Circuit making a ruling without any factual discovery that the statute is preempted because of the impacts it would cause. Keep in mind that in NDA, Your Honor, it was remanded to the district court to then... It reversed the denial of preemption or the finding of no preemption. It was remanded to the district court. The district court then engaged in the analysis of what would be the impacts under Massachusetts law if they all had to be reclassified, found that with the First Circuit's framework the claim was preempted. That would not appeal to the First Circuit who affirmed the district court's ruling that there were sufficient significant impacts. The impacts in New Jersey would be the same as Massachusetts. The reason why Costello is different is the only issue before the case in Costello was the deductions from the wages. Costello allowed the employer, under that state statute, to accept itself, and this is writing footnote 13 of Lupien, allowed the employer to accept itself from that prohibition. Because they had some kind of contractual... Right, so as long as I get the employer's consent I can still make deductions. How do you deal with the fact that when Congress put in this preemption provision it looked at the state of the law in certain states and some of those states had ABC tests, like New Jersey's. By implication, Congress didn't say they were out. Congress spoke on subjects that they said were problematic. And so doesn't that in and of itself, when we're in express preemption land where we have the presumption against preemption and we look at Congress's role here, it allowed those provisions to remain untouched. Shouldn't that persuade us that New Jersey's ABC test should also survive? Your Honor, the answer to that is no because Congress' design is to create the statutory framework. It's the role of the courts to then apply that framework and here... Your Honor, I have a question, but... Please, finish. No, thank you. Your Honor, the role of the courts is to then interpret that preemption provision and figure out when does it apply. The courts have done that and in NDA and Schwann, the court was presented with the exact same significant impacts that would be the impacts here, very different from Costello, and found this is requiring the motor carrier to reshape how it does its business, to switch from the preferred business model of independent contractors to the not preferred model of having employees and all that flows from that conversion. That's exactly what would happen. The effects in this case are identical to the effects and probably, I would suggest, and I'm prepared to explain, more far-reaching than in Massachusetts. Okay, so let me give you a hypo with two variations. The first is this is what's alleged in the complaint. The second is this is what comes out in discovery. My understanding is that express courier services often can't find a place to park. So they park in a loading zone or a waiting zone and they get a bunch of tickets, right? These tickets can be very expensive. They're a substantial part they're budgeting for in the delivery of business. So a courier comes in and says, our delivery model of delivering to people is being impaired and we're going to go out of business because of these parking tickets. So our position is that the FAA preempts the local parking citations. Let's assume these are not safety-related, like you're parking in the middle of an intersection, but you're parking somewhere where you can't stay that long and get a very hefty ticket. In a lot of cities that's true. Is that preempted at the complaint stage? Is that going to be preempted if the discovery comes in and says the parking tickets are 7% or 9% of the budget of this company and they're losing money because of that difference of 7% or 9%? Your Honor, I think the analysis in that scenario would have to be like in any FAA preemption scenario. Is the impact of the state statutory scheme so significant that it has a significant effect on the rates of access to services? Let's assume it's going to drive the two weakest express couriers in this market out of business because they're operating on a margin of less than 5%. Is that significant? Well, I think that's up to the court to decide. That's not the facts we have today. Those are not the facts I'm prepared to argue. I know, but you need to draw a line. That's exactly right. Nessie Johnson in the Seventh Circuit, which was before Costello, said that. The FAA creates a line in the sand. I'm paraphrasing. Creates a line in the sand. The state statutory schemes at issue either fall on the short side of the line or they surpass the line. I'm not really sure what line you're talking about. The input-output line? The line of whether the state statutory scheme at issue has an indirect, direct or indirect, significant impact on the rates, fares, and services of the motor carrier. In this case, your Honor, it feeds into one of the points Atkelee's making. What's the answer? My answer is no. We can't dismiss against the courier. We might be able to give judgment on the pleadings in favor of the courier. We might be able to rule for the courier after discovery, but we can't rule against the courier, certainly at the motion-and-dismiss stage. Your Honor, the ruling would be, whichever court it were before, would have to do the analysis that I'm asking this court to do, which is, does the logical effect of this statutory scheme have such an impact that it's significant on rates, fares, or services? And it feeds into one of the arguments Atkelee's making in this case, which is, well, these are general background laws. They don't directly impact the relationship between the motor carrier and the consumer, so they can't be preempted. We need laws that directly impact that relationship. And if it only impacts the relationship between the motor carrier and its workforce, then it can't be preempted. And we've seen that in this week.  There was maybe a law that was rejected. And just for you, I'd like to refer... I'd like to read from one of your decisions in 2008 under the Airline Deregulation Act. It was fantastic. And I'd like to read the best part of it. One of the arguments... This is Panage v. Continental Airlines from 2008. Airline Deregulation Act with the exact same preemption provision, the same language that the F.A.A. was modeled after. One of the arguments in the case was that, well, the F.A.A., or in that case, the ADA, does not preempt these general background laws, Your Honor, like we were talking about, where we're in these areas of traditional police powers. And, Your Honor, in a footnote, you wrote, referring to the Morales Supreme Court decision, the Supreme Court rejected the petitioner's argument that only state laws specifically addressed to the airline industry are preempted and that the ADA, the Airline Deregulation Act, imposes no constraints on laws of general applicability. And then, Your Honor, it says to Morales. The footnote continues. The court stated that, quote, besides creating an utterly irrational loophole, there is no reason why state impairment of the federal scheme should be deemed acceptable as long as it is affected by the particularized application of a general statute. This notion similarly ignores the sweep of the related to language. And that's, again, saying to Morales. And that's the framework we have. It's the duty and obligation of this court now without a factual record, because the factual record does not matter. What was the procedural posture of that case? Um... Your Honor, it's in my folder there. I don't remember off the top of my head. Oh, I'm sorry. I thought you were reading the case. I cut out the snippet and I stuck it in my little outline, so I'm sorry I don't have the actual decision, but I do have it with me. You know, this seems like a great respite for us to listen to your colleague, and then you can tell me the procedural posture in a few minutes. Thank you, Your Honor. Thank you. Good afternoon. My name is Harold, and I have the great pleasure of representing the plaintiff's appellees. My brother starts with two falsehoods and builds the case upon those falsehoods, and they are absolutely false. The first is that they would have to convert to an independent employee model for all of the drivers. That is simply untrue. First of all, that's what Beebex held at the decision of the Seventh Circuit, and I can read you the quote, where they said that it's only how to make them employees for purposes of the wage statute. In this case, all we're talking about are the New Jersey wage statutes and the unemployment statute. There is no requirement generally that they be converted, and the Supreme Court of New Jersey in the Roker case said, and I can quote, an individual may be considered an employer for some purposes, but an independent contractor for others. And that's been the law all over the country. If you're talking about master and servant, an accident, Social Security, there are many different tests for employment. These are just the tests for when the state is acting in its police powers to protect people's wages. And all the New Jersey statute says is you can't take money from someone's wages, you can't take deduct money, and that's improper, and you have to pay them overtime if they work more than 40 hours. It's much less onerous than the case of a marriage act in the 11th Circuit where they raised the minimum wage in the area where Miami-Dade's airport was to $15 an hour. It's much less onerous than requiring the payment of prevailing wage that was found not preempted by the 9th Circuit and MnDONCA. And so is Lupien dispositive here? Lupien is dispositive. I'm going to tell you wrong. Lupien is not just dispositive on the issue of you can't decide this on the record, but they specifically talk about the difference between the Illinois statute and the Massachusetts statute. And my brother can say, well, this is just like the Massachusetts statute. That is a lie. Remember, in the Schwann case, in the NDA case, and I was the plaintiff's counsel in the Schwann case, they only preempted prong B of prong A, B, and C. K and C are still alive and well in Massachusetts. Counselor, I'd be reticent about calling something a lie. If you disagree with his interpretation, that's fine, but I wouldn't impute any ill will. I didn't mean it in that sense, or I apologize. But it's clear that what Lupien says and what Vivek says and what the First Circuit said in Schwann and in NDA is that there's a fundamental difference with respect to how prong B reads, which was the only thing they preempted. They said it would have to make everybody an employee for two reasons. The whole second part of the phrase, outside of all places of business, is removed from the Massachusetts statute. So if you're acting within the usual course of business, then there's nothing else to find other than someone has to be an employee. And the Massachusetts has an independent contractor statute that's a separate statute, and it applies, to put in the words of the Seventh Circuit and in Lupien, to a slew of statutes, thereby making all these requirements way outside the wage statute. Now, it's very important to understand to see the difference between these two statutory provisions. And again, it was only that second part of prong B that the First Circuit said was preempted, which doesn't exist in New Jersey. What you have in New Jersey is you have a case in New Jersey, a Supreme Court decision, which we cite in our brief, of carpet remnant versus Department of Labor. Carpet remnant were carpet installers. Those carpet installers were labeled as independent contractors. But day in and day out, they went into carpet remnant. They picked up, I guess, carpet remnants, and they installed them in people's houses. Now, under their theory, that would mean that those people would have to be treated as independent contractors. But the Supreme Court of New Jersey, in its wisdom, said no. Those are independent contractors, and it reversed the Department of Labor's determination. And it reversed it for the following reason. First of all, the two prongs, A and C, control are just like the common law, and C, which is whether you have an independently established trade or business, that's the common law, too. The First Circuit had no problem with that. With respect to B, the Supreme Court of New Jersey found that those carpet installers, maybe they picked up the carpet at the carpet warehouse, but then they went out to people's houses, and that was outside the usual places of business, the second part of prong B, and therefore they found them to be independent contractors. Similarly, it's not at all clear on this record, and probably not the case, that these drivers... Can I just interrupt for one second? Sure. What record are we talking about? We're looking at the pleadings, right? We are looking at the pleadings. So the cases that... Let me ask this sort of preparatory question  Right. Your adversary in his briefing gave us a lot of information about what the projections would be if a certain scenario occurred. In your briefing, there was some response to this as well. My question is this. How are we, in this procedural posture, to take into account the various assertions, factual assertions, that both you and your adversary... I'm not making factual assertions, Your Honor. That is, there's no question that the second part of prong B, which is the only thing that the First Circuit found preempted, it was fundamentally different. That's not a factual assertion. That's an assertion based upon how the law has been interpreted and how the New Jersey Supreme Court has interpreted its law. It said it does not have that second part, and that second part was the only concern of the First Circuit, and the First Circuit did not preempt the entire statute. So even if they were correct on everything here, we would still have... We saw the first part of prong B, much of the second part of prong B, we'd still have A and C, and those are legal matters. There's not really... In some strange way, I agree with my brother on the point that much of this can be determined on a legal basis because those two fundamental differences that I've articulated make this case fundamentally different than the First Circuit. What is the legal test then? Because we obviously have educated ourselves about the various cases throughout the circuits that are grappling with whether the preemption provision somehow preempts a particular state law. Folks seem to work with this error law all the time. Propose us a test, propose us factors, give us some legal guideposts that you think we should apply when examining a particular statute. I've been waiting for that question for five years. I'm ready, Ben. I'm ready to hear the answer. Just to amend her question, in this procedural posture, not on a summary judgment record... Yes. Every case... Whatever. Every case that has addressed the issue has found, as did the Third Circuit in Lupien, that there's a presumption against preemption that when states are operating to enact basic police power laws affecting workers that are generally applicable to all workers, there should be no preemption because there's a presumption against preemption. That leaves the one decision, which is the First Circuit decision, that's preempted a certain section of the law. If that section doesn't appear, there's no preemption. That section, according to the First Circuit, this is the First Circuit's conclusion, was preempted for two reasons. First, they were impressed by the fact that it would be virtually impossible to have an independent contractor under that first prong because if it's a delivery company and they're in the usual course of business, they would have to be an employee. You do not have that here in New Jersey as a matter of law because of the way the statute reads and the way Carter Brennan interprets the statute. Secondly, unlike the New Jersey statute, which is a standalone independent contractor statute and then applies to, to quote Lupien, a slew of other labor and employment laws, it is clear that this ABC test that the Supreme Court of New Jersey has provided for in the wage and hour context only applies to overtime and to deductions and it also applies, although it's not in this case, to unemployment. It does not apply to anything else. And so, therefore, the two things that the First Circuit found dispositive and made it fine preemption on that limited basis do not exist here and that's as a matter of law. It sounds like what you're saying is the First Circuit was wrong and it should be limited to its facts but we're thinking more in terms of what are the guideposts we give a lower court and I think you started by saying general applicable laws and police power but how do we formulate that? Are you thinking something about customer-facing versus employer-facing laws or inputs versus outputs here? How do you phrase that as a test? So that's a great question. When my brother talks about the Continental Airlines case and all that, all the decisions that they've cited, the routes and all that, that affected what Congress was intending to regulate. Congress wanted market forces to become, to be governing the relationship between the shipper or the customer in the ABA, which is their airline passengers, and the company doing the shipping or providing the airline service. So that's direct. So there, if you have a law, even though it's indirect, let's say it's a consumer protection law, but a plaintiff is using it to say that my frequent flying miles should be increased by 2,000, then you have a direct interplay that Congress was intending to affect when it enacted deregulation. So what you're saying is, we know we have to allow some indirect claims, but only slightly indirect. And if it's employee-facing, it's usually going to be too indirect. Exactly, because as the 7th Circuit said, SC Johnson, and you said, Your Honor, if you apply that analysis, then anything that a state tries to do to protect its workers, even if it has nothing to do with them as truck drivers or airline employees, would mean that it's preempted, even though the state has... Long before the Airline Deregulation Act and the FAA was enacted, states had laws to protect workers, and it's clear, as all the courts have said, that those are police powers. There's a presumption against preemption, and that should not be overturned unless you can find that there was a congressional intent to do that. And in the employment field, there clearly was not. It would be crazy when you think about it to think that in 1994, when Congress, sub salentio, enacted the FQAA, it intended to knock out all these labor and employment laws that was on the book. And as you know from the 9th Circuit's MnDOTA decision, at the time the FAA was enacted, Congress pointed out 10 states that had no regulation as those that would not be affected by the FAA, and 10 of those states all had wage laws. It's inconceivable that that's what Congress intended. What would be the parameters for gauging when a law has a significant effect on a carrier's price, routes, and services? So now we're in the circumstance where it's not a direct effect. We're in indirect but significant. What are the meets and bounds for a court to consider to determine whether it's significant? The one area we see the Supreme Court speaking of is where someone's, both at the Supreme Court and Roe, and then in DILTS, the binds to you're bound to have to do a particular thing. What other considerations do you think are not significant? Sure. In the DILTS case, which involves meal and rest breaks, there is at least a more significant argument that by imposing meal and rest breaks you are actually affecting the type of service and the routes that the drivers could drive because they might have to not be on the highway so they could stop every two hours. And even that was found not to be preempted. The state points out in their brief that Congress, after these cases came down in 2017 and 2018, submitted an amendment to actually amend the FAA to put in a preemptive provision with respect to meal and rest breaks, and they cite that in their brief. That amendment is now dead. But it shows that Congress, it shows where Congress was concerned. So if you have a statute that actually directly affects the routes that the drivers are driving or the services, or things like that. Now, it's very important to understand because this is another falsehood about the argument that my brother was making. They're saying, well, if we go to an employment model, we have to buy all the vehicles. And that's a big effect on our costs. And you can see where that argument has some plausibility. The problem with that argument is it's just not true. Not as a matter of fact, but as a matter of law. There's nothing that prevents an employer from requiring its employees or its workers or contractors, even if they're employees just for the wage statutes, from driving their own vehicles. If you all have been in law firms, you can ask your paralegal to go do investigation and drive their car. You don't have to buy them that car. You don't even have to pay them. You might pay them because you're a good employer, but there's no requirement. As long as workers are getting minimum wage and they're getting overtime and money's not being taken out of their checks, there's no requirement. New Jersey doesn't have an expense statute. Now, California has an expense statute, but New Jersey doesn't. But do you have any other examples besides the circumstance where it directs the corporation to provide a particular service or stop providing a particular service? Do you have any other examples of case law that talks about significant effect of a particular statute other than that scenario? I'm just not sure that you know that. So we know that statutes, that states actually have a direct effect on prices, rates, and services are going to be granted. Now we have a scenario where we have an indirect, it's going to have an indirect, but significant. Is there such an animal other than those statutes that dictate a particular service must be provided? Can you think of an example other than basically robbing a house? Well, what I would tell you is that although I don't agree with the conclusion, if you read the First Circuit decision, it says that where you have a statute, even if it's an employment statute, that requires everybody to be an independent contractor, there's no way around it, and applies to a slew of statutes to raise the prices beyond anything that was raised in the prevailing wage law in MDACA and the $15 an hour minimum wage in the Marriage Act and things like that. You could have such an incident. We are so far away from that here, Your Honor, that I think that would be, I don't think it's present. Thank you. Thank you very much, Your Honor. Thank you. I hope that's okay. Yeah. Well, I have some more. Gotcha. Pat, I'm sorry to step on your toes. Excuse me. Same question. It came out of my mouth. Good afternoon. Excuse me. Excuse me. Chris Robert from the Attorney General's office in New Jersey. Mr. Roberts. I'm sure you have some other things, but I hope at some point we can get to your presentation of what New Jersey's position is on the appropriate test here. The appropriate test? Yes. Well, the appropriate test is clear. New Jersey abides by the ABC test. That was set forth in the statute, obviously, and upheld in the Hargrove v. Sleepy's case. And as Mr. Linden explained, actually, the Carpet Remnant case is pretty instructive on that as well, particularly with respect to the BPROM, which I think is really the issue. Of course, it is in Schwann. It's a much less restrictive test in the BPROM than it is in Schwann. I'm not sure if that answers your question. Were you asking what the preemption test should be? Yes. You have a view of what the test should be for us to advise our fellow judges on how to determine whether a state statute is preempted, what factors should they consider, what test needs to be satisfied? The factors. I think the Diltz case is instructive on that. In Diltz, the court considered or the court noted, for instance, that prices weren't being set, that the test there, the statute, rather, was not mandating routes. It wasn't telling motor carriers what directions they should use. It wasn't directing them how they should perform their services. Frankly, there is no bright-line rule. There is no bright-line test. The courts across the country have looked to a variety of factors. But the Diltz case, I would say, is instructive in that regard. Your colleague mentioned the presumption. The presumption seems to arise in the dissents in Morales and Owens and the First Circuit in Di Fiori. Di Fiori mentions it. Is the presumption still good law in this four-quad-a context? The presumption against... Preemption. Yes, and especially the State is here today because the consideration of the police powers that the State has the authority to invoke is paramount here. That is actually prominent in a lot of the Third Circuit cases. It's in Gary. It's also in, excuse me, the Lupien case recently, as well as Tocqueville Hall. This really has relied in large part on the protection of the State's police powers when deciding ADA or F-Quad-A preemption. So City of Columbus, does that sound familiar? Yes. I'm not sure that the police powers were invoked in City of Columbus, but... But the presumption against preemption. Absolutely, absolutely. There's a presumption against preemption. And in fact, as has been discussed in length already, preemption only arises when there's a significant impact on prices, routes, and services. And that's just not... That's not something that the ABC test does. It does not significantly impact prices, routes, and services. How do you respond to AEX's counsel's brief and comments about the consequences of having these employees deemed as employees? They go through a whole laundry list of things, including, like, they may have to pay additional benefits, etc. Do you have a response to that? Any alleged connection there is simply too tenuous, remote, or peripheral. I think the Costello-Bevex case is instructive on that, regardless... The court looked at the exact same test, the ABC test, and found that there was no connection there that was significantly impacting prices, routes, and services. So I see that my time is already running low. I just want to emphasize here that the state is appearing as advocates to remind the court that it's important to recognize that the ABC test resides within its unemployment compensation laws. This is a crucial distinction that has not been raised in any of the other briefs or discussed in past decisions. And it's important to note that because the ABC test resides within unemployment compensation laws, it's protected from FQIA preemption by the Social Security Act and the Federal Unemployment Tax Act. The doctrine of preemption was simply not intended to undo decades of New Deal legislation, and that's exactly what the ABC test is here. It was enacted in 1936 as part of that widespread New Deal legislation. But that only helps you with the unemployment compensation provision. The ABC test, as it applies to the wage laws at issue in this case, are separate, aren't they? That's true, but the statute itself resides within the unemployment compensation laws, and therefore the statute is entitled to the protection that FQIA affords, the Federal Unemployment Tax Act. So your understanding of what the defendant is arguing is that the ABC test in its entirety is protected for all purposes, and the consequence of a ruling in that way would impact the unemployment laws, and those are blessed by federal law, and as a result they're co-equal, and the Supremacy Clause should protect that. We would argue that they are empowered, in fact, by the Federal Unemployment Tax Act, correct? It's just the doctrine of preemption was simply not intended to unspool decades of this legislation. I just want to point out the statute. It's cited in the brief. Within the FEWDA scheme, 26 U.S.C. 3305A, it prohibits avoiding unemployment contributions on the grounds that a person is engaged in interstate commerce. The FQIA was enacted, the preemptive provision of the FQIA was enacted to protect interstate commerce. So to argue that the ABC test is preemptive based on the FQIA is simply the wrong mechanism. The defendants in this case may want to argue that their workers are independent contractors, but the FQIA is not the appropriate mechanism to argue that that's the case. All right. Thank you. Thank you. Thank you. I know you have some thoughts, but can you respond to whether we should be concerned about the consequence of a ruling here, or is your request of this Court to find only the ABC test is preempted insofar as it applies to the two New Jersey statutes at issue? Correct, Your Honor. So the only – we're not seeking to invalidate the ABC test. We're not here to say the state doesn't have the authority to construct or implement or enforce such a test. What we're saying is when that test is applied to a motor carrier and the effect of that reclassification has a significant impact on race, routes, and services in that limited context, which is the context we have here, it is preempted and cannot be applied. Your Honor, Judge Schwartz, you asked, give me an example of such an animal where, you know, it's an indirect effect and the indirect effect is so significant that it is preempted because of the significant impact on race, routes, or services. That's exactly what was before the First Circuit in Schwarm. It's the exact issue before the Court today. Now, counsel tried to deflect that case by saying, well, we're talking about a different B-prong in MVA and in the First Circuit. The only reason why the B-prong became important was because in MVA, the trade association came forward in a declaratory judgment action saying, under this test, we can now omit it. So all of our drivers were omitting. They must be reclassified. Now, Court, let's look at the impacts of that to see if it's preempted. That's the analysis we have to look at. We're beyond the New Jersey ABC test. We're on a motion for judgment of the pleadings. We're accepting all the allegations as true. We're accepting that we've misclassified the drivers for the purpose of this motion. Now we have to get to the next step. What is the impact of that reclassification? So it turns on one issue, and counsel, Mr. Lipton, said, well, if you're an independent contractor for one, that doesn't mean you're an independent contractor for all. That exact argument was asserted in Schwann v. FedEx. The First Circuit rejected it. Excuse me. It won in MVA on remand then in the First Circuit. And in MVA on remand, the district court faced that argument and said, the practical and significant reality is that the reclassification will trigger a host of other laws. Counsel for appellees in this case in their opposition brief said, yeah, Massachusetts was different because they thought it would have resulted in days off, parental leave, breaks, minimum wage, overtime, reimbursement. This is appellee's brief at page 28. All the same things apply here under New Jersey law. If someone is an employee, reclassified as an employee under New Jersey law, well, as of October 29th, just a few days ago, there's now a paid sick leave law. There's a paid family leave law. There's a leave, 12 weeks of leave under New Jersey family leave law. But the only issue in front of the court by way of a complaint is whether there are employees for the purposes of two specific New Jersey wage laws. So the consequences of this only would involve those two. That's the only issue that would come out of, if this case goes back to the district court, that's the only issue that would be. Your Honor, I respectfully disagree. All of the consequences of that reclassification under the wage law are exactly the issue that this court has to decide. If I have to now put these employees on my payroll and make payable deduction to withholdings and treat them as W-2 employees, there's no way in the world I'm going to be able to argue. But I don't have to give them family leave. I don't have to give them paid sick leave. I don't have to give them leave under the New Jersey Safe Act for victims of domestic violence or leave. All of the leave statutes that come into play, that's the consequence. This is why the reshaping of the business model is so significant and why in Swann the First Circuit said, this is a state dictating to a mortal carrier how it must provide its service. That is exactly what Congress intended to preempt. And I'd like to say one more thing about Lupien, because I started with Lupien saying it is dispositive. This is why it's dispositive. In Lupien, the court had a restatement of the issue in Costello, the very limited Illinois state law. It's limited because the only issue in the case was making the deductions from Patty. That state statute allows the employer to still make the deduction as long as they get the consent of the employee. Costello said, and Lupien, and in this court Lupien said, that's a very insignificant impact because you're only acquiring the transaction cost of getting their consent. Nothing else has to change. Now this court has the opportunity to address Swann. And in Lupien, the court held in talking about Swann, and I'm reading the third to last paragraph, the court, in referring to the Swann court, the court, considering the parties' cross motions for summary judgment, held that the F quad A preempted the MICS, the Massachusetts Independent Contractor Statute. Basing its holding on the broad sweep of the MICS's regulation, the opinion noted that the MICS provided for a comprehensive regulatory scheme that would, in substance, bar FedEx from using any individuals as full-fledged independent contractors. That's exactly what would happen in this case. So this court already decided a restatement of Costello. Now it has the chance to decide a restatement of Swann. And the result in this case should be the identical result in Swann. If for some reason it's not, then we have a hard and fast circuit split. Right now, everyone argues on the other side that there is no circuit split. They're factually distinguishable because the issues in Costello are so limited. It's just wage deductions. And even the court in Lupien in Fundo 13 says, furthermore, unlike the wage deduction provision in the IWPCA, the Massachusetts law barred the employer from accepting itself by contract. So it's significant that you're all talking about wage deductions in Costello and in Lupien. You're talking about a prohibition that you could accept yourself from by agreement. It has no impact. All right. So the sentence before, the sentence that you read to us, says the court considering the parties cross motions for summary judgment. That's correct. So I presume your point is the fact that Swann was in a different procedural posture should be of no consequence in our ruling. Your Honor, I'll answer that this way. It is of no consequence because when you look at Swann, when the court went through the preemption analysis, there was not a single mention of discovery factual record. The court engaged in the logical impact of the statute. I look back at your Honor's decision in Continental Airlines. It was also cross motions for summary judgment. When I looked at your Honor's explanation of the preemption issue, there was not a single reference to discovery or factual record. In fact, what your Honor held in that case, the issue on preemption that you were confronted with was, so the issue was the plaintiff's… Well, my first question is was I at fault? There was no… Because I was on the district court. It was such a good decision, there's no politics to it. But your Honor, so briefly, if I may, the issue in the case under the Airline Deregulation Act, the plaintiff's probably public accommodation, failure to accommodate case under the New Jersey Law Against Discrimination in the public accommodation context because the plaintiff asked that the airline not distribute peanuts on the flight due to a very severe peanut allergy, right? So this person had a very severe allergy. The airline refused the request, provided the peanuts on the flight anyway. There was a lawsuit that followed. The question on preemption that your Honor was confronted with was, is the provision of peanuts and food and beverages a service? So we know that's preempted if it relates to a weight-added service. Is it a service? You were confronted with that question. Your Honor found that it was a service, and in doing so you rejected precedent from the Ninth Circuit that said, service means transporting a passenger from point A to point B. Anything else is too far away, not really service. Your Honor rejected that, adopted the First Circuit approach and said that is a service, and therefore your Honor found preemption. But it's still a customer facing, it still affects the customer experience, which is why the child or whoever the plaintiff cared about it. Right. So what we have here, Your Honor, is a state ABC test. So the question is, can a state ABC test be preempted? Nothing else. Okay. I'm sorry. It's okay. Go ahead. So the question is, can a state ABC test be preempted? The answer is very simple. It can be preempted if the application of that test, the natural consequences of that reclassification are so significant on rates, facts, and services that it's preempted. If they're too tenuous, remote, or peripheral, then they're not preempted. That's the test. So Your Honor, that's the test. Here's the test, and it's in both parties' briefings. Go ahead. The test is, a state law is sufficiently related to a rate by the service of a motor carrier if the state law has a significant impact on their carriers' rates, facts, or services. That's the test. So this case is Schwann. Lupien was Costello. Again, if this court declines to reverse the lower court, we have a clear circuit split between this circuit and the first circuit because of the far-reaching impacts of the New Jersey law, very distinguishable from the impacts of the limited Illinois law. Thank you, Your Honor. Thank you. Thank you. Counsel, thank you for your remarks. I will take the matter under advisement.